Matter of Kowal v Mohr (2023 NY Slip Op 02480)

Matter of Kowal v Mohr

2023 NY Slip Op 02480

Decided on May 9, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, BANNISTER, OGDEN, AND GREENWOOD, JJ.

419 CAE 23-00703

[*1]IN THE MATTER OF SPENCER KOWAL, AMANDA ADAMS, DONALD HANAVAN AND PATRICIA HANAVAN, PETITIONERS-RESPONDENTS,
v
RALPH MOHR AND JEREMY ZELLNER, COMMISSIONERS OF ERIE COUNTY BOARD OF ELECTIONS, RESPONDENTS, AND LETITIA JAMES, ATTORNEY GENERAL OF STATE OF NEW YORK, INTERVENOR-APPELLANT. 

LETITIA JAMES, ATTORNEY GENERAL, ALBANY (SARAH L. ROSENBLUTH OF COUNSEL), FOR INTERVENOR-APPELLANT. 
LAW OFFICE OF JOSEPH T. BURNS, PLLC, WILLIAMSVILLE (JOSEPH T. BURNS OF COUNSEL), FOR PETITIONERS-RESPONDENTS. 

 Appeal from an order and judgment (one paper) of the Supreme Court, Erie County (Paul Wojtaszek, J.), entered April 10, 2023, in a proceeding pursuant to Election Law article 16. The order and judgment, inter alia, declared that Chapter 480 of the Laws of 2021 is unconstitutional. 
It is hereby ORDERED that the order and judgment so appealed from is unanimously modified on the law by denying the petition, vacating the second decretal paragraph and the three ordering paragraphs, granting the counterclaim and granting judgment in favor of Intervenor-Appellant as follows:
It is ADJUDGED and DECLARED that Chapter 480 of the Laws of 2021 is constitutional, and as modified the order and judgment is affirmed without costs.
Memorandum: In this proceeding pursuant to Election Law article 16, petitioners seek a declaration that Chapter 480 of the Laws of 2021 (statute) is unconstitutional and an order directing respondents Ralph Mohr and Jeremy Zellner, Commissioners of the Erie County Board of Elections (commissioners), to count all write-in votes cast in primary elections regardless of the party affiliation of the named candidates. Supreme Court granted the petition, declared the statute unconstitutional, ordered the commissioners to count all write-in votes, and effectively denied the counterclaim of intervenor, Letitia James, Attorney General of the State of New York (intervenor), seeking a declaration that the statute is constitutional. Although the court stated in its brief oral decision that it was applying the strict scrutiny test to determine the statute's constitutionality, it gave no reasons for finding the statute unconstitutional. Intervenor appeals, and we modify the order and judgment by denying the petition, vacating the second decretal paragraph and the three ordering paragraphs, granting the counterclaim, and declaring that the statute is constitutional.
The statute, which became effective on October 8, 2021, amended three sections of the Election Law to limit the universe of permissible write-in primary votes to enrolled members of the relevant party. Election Law § 6-164 was amended to specify that the opportunity to ballot process could be carried out on behalf of only candidates enrolled in the relevant party (see L 2021, ch 480, § 1). Section 6-166 (2) was amended to change the language required on the opportunity to ballot petition correspondingly (see L 2021, ch 480, § 2). Finally, section 8-308 was amended to state: "A write-in ballot cast in a party primary for a candidate not enrolled in such party shall be void and not counted" (Election Law § 8-308 [4]; see L 2021, ch 480, § 3).
Initially, we agree with petitioners that they have standing to challenge the statute insofar as they allege a "threatened injury to a protected interest by reason of the operation of the unconstitutional feature of the statute" (Cherry v Koch, 126 AD2d 346, 351 [2d Dept 1987], lv denied 70 NY2d 603 [1987]; see Matter of Donohue v Cornelius, 17 NY2d 390, 397 [1966]; Forward v Webster Cent. Sch. Dist., 136 AD2d 277, 280 [4th Dept 1988], appeal dismissed 72 NY2d 908 [1988], reconsideration denied 73 NY2d 740 [1988]).
In their petition, petitioners asserted that the statute violates their rights to freedom of speech, freedom of association, and suffrage (see NY Const, art I, §§ 8, 9; art II), equal protection of the laws (see NY Const, art I, § 11), and due process of law (see NY Const, art I, § 6). A statute "enjoy[s] a strong presumption of constitutionality," and the party attempting to establish its facial unconstitutionality "bears the heavy burden of proving beyond a reasonable doubt that the statute is in conflict with the Constitution" (People v Viviani, 36 NY3d 564, 576 [2021] [internal quotation marks omitted]). "[C]ourts strike [a statute] down only as a last unavoidable result . . . after every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible" (White v Cuomo, 38 NY3d 209, 216 [2022] [internal quotation marks omitted]).
When we consider a constitutional challenge to a state election law, we "must weigh the character and magnitude of the asserted injury to the [constitutional] rights . . . that [petitioners] seek[] to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden [petitioners'] rights" (Matter of Walsh v Katz, 17 NY3d 336, 344 [2011] [internal quotation marks omitted]; see Burdick v Takushi, 504 US 428, 434 [1992]; Tashjian v Republican Party of Connecticut, 479 US 208, 213-214 [1986]; Anderson v Celebrezze, 460 US 780, 788-789 [1983]). Where such constitutional rights are subjected to "severe restrictions," a state election law "must be narrowly drawn to advance a state interest of compelling importance"; where a state election law "imposes only reasonable, nondiscriminatory restrictions" on voters' constitutional rights, those restrictions will generally be justified by the state's "important regulatory interests" (Burdick, 504 US at 434 [internal quotation marks omitted]; see Walsh, 17 NY3d at 346). "Although laws that affect candidates always have at least some theoretical, correlative effect on voters . . . , not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review . . . That is, the mere fact that a state election law creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny" (Walsh, 17 NY3d at 344 [internal quotation marks omitted]). In reviewing such barriers to candidacy, we must "examine in a realistic light the extent and nature of their impact on voters" (Bullock v Carter, 405 US 134, 143 [1972]; see Anderson, 460 US at 786-788).
Here, the intended effect of the statute is to limit the universe of permissible write-in candidates in a party primary election to individuals who are members of that party. Political parties have protected associational rights, which include the right to identify their own members and to select candidates who best represent their ideals and preferences (see Eu v San Francisco County Democratic Central Comm., 489 US 214, 224 [1989]; Golden v Clark, 76 NY2d 618, 627-628 [1990]) and the "right to exclude non-members from their candidate nomination process" (Maslow v Board of Elections in the City of N.Y., 658 F3d 291, 296 [2d Cir 2011], cert denied 565 US 1275 [2012]; see Clingman v Beaver, 544 US 581, 587-591 [2005]). We conclude that the restrictions imposed by the statute were intended to protect those rights, and that petitioners have no associational right to involve non-members in the nomination process of their parties (see Maslow, 658 F3d at 297-298).
We note that the statute does not preclude nonparty candidates from participating in the general election, which they may do by circulating an independent nominating petition pursuant to Election Law § 6-138, accepting designation by a party committee pursuant to section 6-120, or conducting a general election write-in campaign (see § 8-308). Moreover, nonparty candidates may access a party primary ballot by obtaining a certificate of authorization from that party committee (see § 6-120 [3]) or by changing their party enrollment prior to the statutory deadline [*2](see § 5-304 [3]). Because "adequate ballot access" is afforded under the Election Law, we conclude that the statute "imposes only a limited burden on voters' rights" (Burdick, 504 US at 438-439), one fairly described as "incidental and remote" (Walsh, 17 NY3d at 346).
Moreover, petitioners have not been denied the right to vote; instead, the choices available to them in the primary election have been constrained pursuant to a legislative determination that candidates in a party primary should be members of that party, unless otherwise authorized by a party committee (see generally Matter of Moody v New York State Bd. of Elections, 165 AD3d 479, 480 [1st Dept 2018]). What petitioners characterize as an equal protection issue—some voters' votes are counted while others' votes are not—is more accurately identified as a reasonable restriction on what candidates may seek office in the context of a party primary. The distinction between valid and invalid votes in this context is not based on any characteristic of a voter, but rather on whether the candidate is qualified, i.e., a member of the party holding the primary. We conclude that the statute imposes only reasonable, nondiscriminatory restrictions upon petitioners' constitutional rights.
We agree with intervenor that the legislature's stated justification for the statute—the prevention of party raiding, or the takeover of a party primary by nonaffiliated or hostile voters (see Matter of Master v Pohanka, 10 NY3d 620, 626 [2008])—constitutes a legitimate interest supporting the legislation (see Burdick, 504 US at 440; Maslow, 658 F3d at 298). In this context, "[w]hile courts may look to the record relied on by the legislature, even in the absence of such a record, factual support for the legislation [may] be assumed by the courts to exist" (White, 38 NY3d at 217 [internal quotation marks omitted]).
Finally, we note that the court did not engage in the sort of meaningful analysis required by relevant United States Supreme Court and New York Court of Appeals case law in this area (see generally Anderson, 460 US at 789; Walsh, 17 NY3d at 344). The brief bench decision containing no reasoning does not constitute the sort of weighing and balancing required to invalidate a provision of the Election Law.
Entered: May 9, 2023
Ann Dillon Flynn
Clerk of the Court